**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**District of Delaware**

(State)

Case number *(if known)*: _____    Chapter ___11___

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | eFolks Holdings, Inc. |

| | |
|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 27-2815213 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **257 East 200 South**<br>Number        Street | Number            Street |
| **Suite 1200** | P.O. Box |
| **Salt Lake City**        **Utah**    **84111**<br>City                    State    Zip Code | City                    State    Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| **Salt Lake County**<br>County | Number            Street |
| | City                    State    Zip Code |

| | | |
|---|---|---|
| 5. | **Debtor's website (URL)** | efolks.com |

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | eFolks Holdings, Inc. | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes .
**5419 - Other Professional, Scientific, and Technical Services**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11  *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, and it chooses to proceed under Subchapter V of Chapter 11. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No

☐ Yes.

| District | | When | | Case number | |
|---|---|---|---|---|---|
| | | | MM/DD/YYYY | | |
| District | | When | | Case number | |
| | | | MM/DD/YYYY | | |

Debtor  **eFolks Holdings, Inc.**                              Case number *(if known)* _____
     Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.  Debtor  **See Rider 1**                Relationship  **Affiliate**

District  **District of Delaware**             When  **06/04/2023**
                                              MM / DD / YYYY
Case number, if known  _____

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**
_____
     Number     Street

_____
     City             State   Zip Code

**Is the property insured?**

☐ No

☐ Yes.  Insurance agency  _____
     Contact name  _____
     Phone  _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☒ More than 100,000

Debtor    eFolks Holdings, Inc.
     Name                              Case number *(if known)*

| 15. Estimated assets (on a consolidated basis) | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |
| 16. Estimated liabilities (on a consolidated basis) | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

**Request for Relief, Declaration, and Signatures**

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| 17. Declaration and signature of authorized representative of debtor | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
| | I have been authorized to file this petition on behalf of the debtor. |
| | I have examined the information in this petition and have a reasonable belief that the information is true and correct. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **06/04/2023**
             MM/ DD / YYYY

**X** _(signature)_                       **Chad Wallace**
    Signature of authorized representative of debtor        Printed name

Title   **Chief Executive Officer and President**

| 18. Signature of attorney | **X**   */s/ Domenic E. Pacitti* | Date | **06/04/2023** |
| |     Signature of attorney for debtor | | MM/DD/YYYY |

       **Domenic E. Pacitti**
       Printed name

       **Klehr Harrison Harvey Branzburg LLP**
       Firm name

       **919 North Market Street, Suite 1000**
       Number            Street

       **Wilmington**               **Delaware**     **19801**
       City                        State      ZIP Code

       **(302) 426-1189**              **dpacitti@klehr.com**
       Contact phone                   Email address

       **3989**                **Delaware**
       Bar number              State

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**District of Delaware**
(State)

Case number *(if known)*: _____        Chapter ___11___

☐ Check if this is an
amended filing

### Rider 1
### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of Delaware for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of PGX Holdings, Inc.

- PGX Holdings, Inc.
- Credit Repair UK, Inc.
- Credit.com, Inc.
- Creditrepair.com Holdings, Inc.
- Creditrepair.com, Inc.
- eFolks Holdings, Inc.
- eFolks, LLC
- John C. Heath, Attorney At Law PC
- Progrexion ASG, Inc.
- Progrexion Holdings, Inc.
- Progrexion IP, Inc.
- Progrexion Marketing, Inc.
- Progrexion Teleservices, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EFOLKS HOLDINGS, INC., | ) | Case No. 23-_____(___) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

### LIST OF EQUITY SECURITY HOLDERS[1]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| PGX Holdings, Inc. | 257 East 200 South, Suite 1200 Salt Lake City, Utah 84111 | 100% |

---

[1]   This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure.  All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EFOLKS HOLDINGS, INC., | ) | Case No. 23-_____(___) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**<u>CORPORATE OWNERSHIP STATEMENT</u>**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| PGX Holdings, Inc. | 100% |

Fill in this information to identify the case:

Debtor name **PGX Holdings, Inc., et al.**

United States Bankruptcy Court for the: The District of Delaware

Case number (if known): _____

☐ Check if this is an amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | CONSUMER FINANCIAL PROTECTION BUREAU 1700 G STREET, NW WASHINGTON, DC 20552 | ATTN: MAUREEN MCCOWN TITLE: ENFORCEMENT ATTORNEY PHONE: 202-435-9202 EMAIL: MAUREEN.MCOWEN@CFPB.GOV | LITIGATION | CONTINGENT, UNLIQUIDATED | | | UNDETERMINED |
| 2 | HAWTHORNE DIRECT, LLC 1201 WEST 5TH ST SUITE T230 LOS ANGELES, CA 90017 | ATTN: JESSICA HAWTHORNE-CASTRO TITLE: CHIEF EXECUTIVE OFFICER PHONE: 310-844-0606 EMAIL: JESSICA.HAWTHORNECASTRO@HAWTHORNEDIRECT.COM | TRADE PAYABLE | | | | $ 1,249,215 |
| 3 | HEXAWARE TECHNOLOGIES LTD BLDG 152 MILLENNIUM BUSINESS PARK MAHAPE, NAVI MUMBAI MAHARASHTRA, 0 400 710, INDIA | ATTN: DIVYA PRADEEPKUMAR TITLE: SENIOR EXECUTIVE PHONE: 91-22-67919595 EMAIL: DIVYAP@HEXAWARE.COM | TRADE PAYABLE | | | | $ 640,672 |
| 4 | ARGANO, LLC 6100 W PLANO PARKWAY SUITE 1800 PLANO, TX 75093 | ATTN: CHIP REGISTER TITLE: CHIEF EXECUTIVE OFFICER PHONE: 214-778-2104 EMAIL: CHIP.REGISTER@ARGANO.COM | TRADE PAYABLE | | | | $ 606,979 |
| 5 | TRANS UNION INC 555 W. ADAMS STREET CHICAGO, IL 60661 | ATTN: CHRISTOPHER A. CARTWRIGHT TITLE: PRESIDENT AND CHIEF EXECUTIVE OFFICER PHONE: 312-985-2000 EMAIL: CCARTWRIGHT@TRANSUNION.COM FAX: 312-466-7986 | TRADE PAYABLE | | | | $ 566,216 |
| 6 | EXPERIAN PO BOX 881971 LOS ANGELES, CA 90088-1971 | ATTN: LLOYD PITCHFORD TITLE: CHIEF FINANCIAL OFFICER PHONE: 714-830-7000 EMAIL: LLOYD.PITCHFORD@EXPERIANGROUP.COM FAX: 714-830-2449 | TRADE PAYABLE | | | | $ 427,861 |
| 7 | ISPOT.TV, INC 15831 NE 8TH ST #100 BELLEVUE, WA 98008 | ATTN: SEAN MULLER TITLE: FOUNDER AND CHIEF EXECUTIVE OFFICER PHONE: 425-590-9727 EMAIL: SEAN.MULLER@ISPOT.TV | TRADE PAYABLE | | | | $ 284,300 |
| 8 | MICROSOFT ONLINE, INC. ONE MICROSOFT WAY REDMOND, WA 98052 | ATTN: MIKO LACSAMANA TITLE: SENIOR ACCOUNT MANAGER PHONE: 888-725-1047 EMAIL: MIKOL@MICROSOFT.COM | TRADE PAYABLE | | | | $ 237,520 |
| 9 | FICO (FAIR ISAAC CORPORATION) 3661 VALLEY CENTRE DRIVE SUITE 500 SAN DIEGO, CA 92130 | ATTN: WILL LANSING TITLE: CHIEF EXECUTIVE OFFICER PHONE: 408-817-9100 EMAIL: WLANSING@FICO.COM | TRADE PAYABLE | | | | $ 230,475 |
| 10 | SITE SELECTION GROUP 8235 DOUGLAS AVE #500 DALLAS, TX 75205 | ATTN: KING WHITE TITLE: CHIEF EXECUTIVE OFFICER PHONE: 214-271-0582 EMAIL: KWHITE@SITESELECTIONGROUP.COM | TRADE PAYABLE | | | | $ 207,270 |
| 11 | FACEBOOK INC. 151 N FRANKLIN ST. CHICAGO, IL 60606 | ATTN: WALTER LITTLE TITLE: ACCOUNT MANAGER, GLOBAL BUSINESS GROUP - META ADVERTISING PHONE: 240-602-0139 EMAIL: WALTERLITTLE@META.COM | TRADE PAYABLE | | | | $ 197,216 |
| 12 | SHARONDA TAYLOR C/O THE LAW OFFICES OF DANIEL BALSAM 2601C BLANDING AVENUE #271 ALAMEDA, CA 94501 | ATTN: DAN BALSAM TITLE: COUNSEL PHONE: (415) 265-1123 EMAIL: LEGAL@DANBALSAM.COM | LEGAL SETTLEMENT | | | | $ 155,070 |

Debtor ___ PGX Holdings, Inc, et al., _____     Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 13 | SANDRA WILSON C/O THE LAW OFFICES OF DANIEL BALSAM 2601C BLANDING AVENUE #271 ALAMEDA, CA 94501 | ATTN: DAN BALSAM TITLE: COUNSEL PHONE: (415) 265-1123 EMAIL: LEGAL@DANBALSAM.COM | LEGAL SETTLEMENT | | | | $          143,781 |
| 14 | INVOCA, INC 1025 CHAPALA STREET SANTA BARBARA, CA 93101 | ATTN: GREGG JOHNSON TITLE: CHIEF EXECUTIVE OFFICER PHONE: 877-635-0792 EMAIL: GJOHNSON@INVOCA.COM | TRADE PAYABLE | | | | $           90,133 |
| 15 | DRIPS HOLDINGS LLC 1700 W MARKET ST SUITE 173 AKRON, OH 44308 | ATTN: AARON CHRISTOPHER EVANS TITLE: CHIEF EXECUTIVE OFFICER PHONE: 512-643-7477 EMAIL: AC@DRIPS.COM | TRADE PAYABLE | | | | $           74,570 |
| 16 | HOODOO DIGITAL, LLC 132 SOUTH STATE ST SALT LAKE CITY, UT 84111 | ATTN: ANDY WAKEFIELD TITLE: CO-FOUNDER PHONE: 801-896-9667 EMAIL: ANDY@HOODOO.DIGITAL | TRADE PAYABLE | | | | $           73,818 |
| 17 | THOMAS ABLAO DBA NOBLE CONNECTIONS 2750 E OAK HILL DR UNIT 31 ONTARIO, CA 91761 | ATTN: THOMAS ABLAO TITLE: MANAGING PARTNER PHONE: EMAIL: EMAIL ON FILE | TRADE PAYABLE | | | | $           61,750 |
| 18 | CALCULATED RESEARCH & TECHNOLOGY 629 E QUALITY DR SUITE 201 AMERICAN FORK, UT 84003 | ATTN: TIM AGUILAR TITLE: FOUNDER AND CHIEF EXECUTIVE OFFICER PHONE: 801-222-0930 EMAIL: TIMA@CR-T.COM | TRADE PAYABLE | | | | $           58,570 |
| 19 | MERCHANT ADVOCATE LLC 281 ROUTE 34 SUITE 101 COLTS NECK, NJ 07722 | ATTN: ERIC COHEN TITLE: CHIEF EXECUTIVE OFFICER PHONE: 888-890-8822 EMAIL: ERIC@MERCHANTADVOCATE.COM FAX: 732-862-1129 | TRADE PAYABLE | | | | $           22,930 |
| 20 | AMERICA ONE FUNDING (QUINSTREET) 950 TOWER LANE 6TH FLOOR FOSTER CITY, CA 94404 | ATTN: ALEX YUNERMAN TITLE: SENIOR VICE PRESIDENT - QUINSTREET PHONE: 408-568-1690 EMAIL: AYUNERMAN@QUINSTREET.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 21 | ATWAVE, LLC 804 OCEAN DRIVE MIAMI BEACH, FL 33139 | ATTN: AMANDA COLEMAN TITLE: FOUNDER AND CHIEF EXECUTIVE OFFICER PHONE: 855-890-3313 EMAIL: AMANDA@ATWAVE.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 22 | BLACKOPTEK CE INC. (CALL ENGINE INC.) 3780 14TH AVENUE SUITE 209 MARKHAM, ON L3R 9Y5 CANADA | ATTN: RYAN MCVEY TITLE: CHIEF EXECUTIVE OFFICER PHONE: 866-943-1485 EMAIL: RYAN@CALLENGINE.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 23 | BRADLEY LEAD GROUP 1195 MADDOX CT WESTMINSTER, CO 80023 | ATTN: BILLY NESS TITLE: OWNER PHONE: 303-919-6901 EMAIL: BILLYNESS@BRADLEYLEADGROUP.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 24 | CICOLA INVESTMENTS (NORTH POINT DIRECT) 12540 BROADWELL ROAD SUITE 2201 MILTON, GA 30004 | ATTN: ROY CICOLA TITLE: PRINCIPLE PHONE: 917-601-0420 EMAIL: ROY@NORTHPOINTDIRECT.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 25 | CREDIT SESAME, INC. 444 CASTRO STREET SUITE 500 MOUNTAIN VIEW, CA 94041 | ATTN: ADRIAN NAZARI TITLE: FOUNDER AND CHIEF EXECUTIVE OFFICER PHONE: EMAIL: ANAZARI@CREDITSESAME.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 26 | EQUIFAX CONSUMER SERVICES 1550 PEACHTREE STREET NW ATLANTA, GA 30309 | ATTN: MARK BEGOR TITLE: CHIEF EXECUTIVE OFFICER PHONE: 404-885-8732 EMAIL: MARK.BEGOR@EQUIFAX.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 27 | GOOGLE INC. DEPT 33654 PO BOX 39000 SAN FRANCISCO, CA 94139 | ATTN: BROOKS ARUNDEL TITLE: ACCOUNT EXECUTIVE, NEW BUSINESS STRATEGY GOOGLE CUSTOMER SOLUTIONS PHONE: (703) 835-4607 EMAIL: BARUNDEL@GOOGLE.COM FAX: 650-253-0001 | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |

Debtor ____ PGX Holdings, Inc, et al., _____

Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 28 | LENDING TREE 1415 VANTAGE PARK DRIVE SUITE 700 CHARLOTTE, NC 28203 | ATTN: DOUG LEBDA TITLE: FOUNDER AND CHIEF EXECUTIVE OFFICER PHONE: 800-505-7916 EMAIL: DOUG.LEBDA@LENDINGTREE.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 29 | TY WESTON ADDRESS ON FILE | NOTICE ON FILE | SEVERANCE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |
| 30 | ULTRA98 421-721 KEELE ST. CONCORD, ON L4K1Z8 CANADA | ATTN: MUZAFFAR ABBAS TITLE: CHIEF EXECUTIVE OFFICER PHONE: 647-781-4849 EMAIL: MUZAFFAR@ULTRA98.COM | TRADE PAYABLE | UNLIQUIDATED | | | UNDETERMINED |

Fill in this information to identify the case and this filing:

Debtor Name      eFolks Holdings, Inc.

United States Bankruptcy Court for the:     **District of Delaware**

                                                                     (State)

Case number (If known):

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors      12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐    *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐    *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐    *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐    *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐    *Schedule H: Codebtors (Official Form 206H)*

☐    *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐    Amended Schedule

☒    *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒    Other document that requires a declaration **List of Equity Security Holders, Corporate Ownership Statement, and Certification of Creditor Matrix**

I declare under penalty of perjury that the foregoing is true and correct.

| | | |
|---|---|---|
| Executed on | <u>06/04/2023</u><br>MM/ DD/YYYY | ☒ */s/ Chad Wallace*<br>Signature of individual signing on behalf of debtor |
| | | **Chad Wallace**<br>Printed name |
| | | **Chief Executive Officer and President**<br>Position or relationship to debtor |

**Official Form 202**              **Declaration Under Penalty of Perjury for Non-Individual Debtors**

*Execution Version*

**OMNIBUS UNANIMOUS WRITTEN CONSENT
IN LIEU OF A SPECIAL MEETING OF
THE SOLE MEMBER AND MANAGER,
BOARDS OF DIRECTORS, OR MAJORITY STOCKHOLDER**

**June 4, 2023**

The undersigned, being the (i) sole member and the manager of the company listed on **Schedule 1**, (ii) applicable board of directors of each of the companies listed on **Schedule 2** attached hereto (the companies in clauses (i) and (ii), each, a "Company" or a "Filing Entity" and, collectively, the "Companies" or the "Filing Entities") (each governing body in clauses (i) and (ii), a "Board"), and (iii) the applicable holder of a majority of the common stock of the Company listed on **Schedule 3** attached hereto (the "Stockholder"), hereby take the following actions and adopts the following resolutions by unanimous written consent, in lieu of a special meeting of each Board or stockholder, as applicable, pursuant to each Company's limited liability company agreement or bylaws, as applicable (the "Governing Agreement"), and the respective laws of the state of formation of each Company:

**CONFIRMATION OF DIRECTORS AND OFFICERS**

**RESOLVED**, that each of the individuals set forth on **Exhibit A** attached hereto shall serve as a director or officer, as applicable, as set forth by their name, for each such Filing Entity.

**CHAPTER 11 FILING**

**WHEREAS**, each Board has considered presentations by such Filing Entity's management (the "Management") and financial and legal advisors (collectively, the "Advisors") regarding the liabilities and liquidity of such Filing Entity, the strategic alternatives available to it, and the effect of the foregoing on each Filing Entity's business;

**WHEREAS**, each Board has had the opportunity to consult with Management and the Advisors and has fully considered each of the strategic alternatives available to each Filing Entity; and

**WHEREAS**, in accordance with the Governing Agreement of PGX Holdings, Inc., the Stockholder must approve certain actions taken by the Board thereof, including the voluntary filing for bankruptcy or other insolvency proceedings on account of PGX Holdings, Inc. and its subsidiaries.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, that in the business judgment of each Board (and with the approval of the Stockholder in accordance with the applicable Governing Agreement), it is desirable and in the best interests of each Filing Entity (including a consideration of its creditors and other parties in interest) that each Filing Entity shall be, and hereby is, in all respects, authorized to file, or cause to be filed, a voluntary petition for relief commencing a case (the "Chapter 11 Cases") under the

provisions of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") or other court of competent jurisdiction; and

**RESOLVED**, that any of the Chief Executive Officer, President, Chief Financial Officer, any Executive Vice President, General Counsel, and Secretary or any other duly-appointed officer of each Filing Entity (collectively, the "Authorized Signatories"), acting alone or with one or more other Authorized Signatories be, and they hereby are, authorized, empowered, and directed to execute and file on behalf of each Filing Entity all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of each Filing Entity's business.

## RETENTION OF PROFESSIONALS

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "Kirkland"), as bankruptcy counsel, to represent and assist each Filing Entity in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Filing Entity's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Kirkland;

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ the law firm of Klehr Harrison Harvey Branzburg LLP ("Klehr Harrison"), as local bankruptcy counsel, to represent and assist each Filing Entity in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Filing Entity's rights and obligations, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Klehr Harrison;

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ the firm of Alvarez & Marsal North America, LLC ("A&M"), as financial advisor, to represent and assist each Filing Entity in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Filing Entity's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of A&M;

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ the firm of Greenhill & Co., LLC ("Greenhill"), as investment banker, to represent and assist each Filing Entity in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Filing Entity's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and

directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Greenhill;

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ the firm of Kurtzman Carson Consultants LLC ("KCC"), as notice and claims agent, to represent and assist each Filing Entity in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Filing Entity's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain the services of KCC;

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ the firm of Landis Rath & Cobb LLP ("Landis Rath & Cobb"), as conflicts counsel, to represent and assist each Filing Entity in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Filing Entity's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain the services of Landis Rath & Cobb;

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, authorized and directed to employ any other professionals to assist each Filing Entity in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary; and

**RESOLVED**, that each of the Authorized Signatories be, and they hereby are, with power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Signatories deem necessary, proper, or desirable in connection with each Filing Entity's Chapter 11 Case, with a view to the successful prosecution of such case.

## SUPERPRIORITY SECURED DEBTOR-IN-POSSESSION FINANCING AGREEMENT

**WHEREAS**, PGX Holdings, Inc., a Delaware corporation ("Holdings"), Progrexion Holdings, Inc., a Delaware corporation ("Progrexion"), Credit.com, Inc., a Delaware corporation ("Credit.com"), eFolks Holdings, Inc., a Delaware corporation ("Efolks"), Creditrepair.com Holdings, Inc., a Delaware corporation ("Creditrepair.com", and together with Progrexion, Credit.com and Efolks, collectively, the "Borrowers" and each, a "Borrower"), each Guarantor signatory thereto, Blue Torch Finance LLC, in its capacity as Agent for the DIP Lenders (in such capacity, together with its successors and assigns, the "DIP Agent"), and each lender from time to time party thereto (collectively, the "DIP Lenders") propose to enter into that certain Superpriority

Secured Debtor-In-Possession Financing Agreement, dated as of the date hereof (the "<u>DIP Financing Agreement</u>");

**WHEREAS**, the obligation of the DIP Lenders to make Loans to the Borrowers under the DIP Financing Agreement and the other DIP Loan Documents (as defined below) is subject to each Company having satisfied certain conditions described in the DIP Financing Agreement;

**WHEREAS**, the Borrowers have requested that the Lenders party thereto provide a senior secured, superpriority debtor-in-possession term loan facility available in multiple draws as set forth herein to the Borrowers, consisting of (i) an interim term loan facility and (ii) a final delayed draw term loan facility in an aggregate maximum principal amount of (clauses (i) and (ii) hereof, the "<u>New Money DIP Facility</u>") and (iii) a roll-up facility, representing a roll-up of Prepetition First Lien Obligations (clause (iii) hereof, the "<u>Roll-Up DIP Facility</u>" and together with the New Money DIP Facility, the "<u>DIP Facility</u>"); and

**WHEREAS**, each Company will receive benefits from the Loans and other extension of credit made by the DIP Lenders to the Borrowers under the DIP Financing Agreement and the other DIP Loan Documents, which are necessary and convenient to the conduct, promotion and attainment of the business of such Company.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, that (i) the form, terms and provisions of the DIP Financing Agreement and each other instrument or document to be delivered thereunder or otherwise in connection therewith, including, without limitation, each of the instruments and documents listed below (collectively, "<u>DIP Loan Documents</u>" and each, a "<u>DIP Loan Document</u>"), substantially in the form delivered pursuant to the DIP Financing Agreement, (ii) each Company's execution and delivery of the DIP Loan Documents, and (iii) each Company's performance of its respective obligations (including, without limitation, any guarantee and/or grant of security interests) under the DIP Loan Documents, in each case, be, and hereby is, in all respects, confirmed, authorized, ratified and approved:

    (a)     The DIP Financing Agreement

    (b)     any notes in connection with the DIP Financing Agreement;

    (c)     any fee letter in connection with the DIP Financing Agreement;

    (d)     any security agreement in connection with the DIP Financing Agreement;

    (e)     the Interim Order;

    (f)     the Final Order;

    (g)     any intercreditor agreement in connection with the DIP Financing Agreement;

    (h)     any commitment letter in connection with the DIP Financing Agreement;

(i)     any guarantee in connection with the DIP Financing Agreement;

(j)     Uniform Commercial Code financing statements, fixture filings, and other instruments as may be reasonably requested by the DIP Agent or as may be necessary or appropriate to create, preserve and perfect the security interests purported to be created by the DIP Loan Documents;

(k)     such other security agreements, pledge agreements, deeds of trust, mortgages, notices, financing statements, tax affidavits, reaffirmation agreements, and other instruments as the DIP Agent may reasonably request or as may be necessary or appropriate to create, preserve and perfect the liens purported to be required pursuant to the DIP Loan Documents to be created in the Collateral as collateral security for the payment of obligations, advances, debts or liabilities related to each Company's obligations;

(l)     such agreements with third parties (including, without limitation, bank agency agreements, motor vehicle perfection agreements, lockbox agreements, blocked account agreements, control agreements, credit card notices, customs broker agreements, landlord agreements and warehouse letters) relating to the Collateral as the DIP Agent may reasonably request or as may be necessary or appropriate to create, preserve and perfect the liens purported to be required pursuant to the DIP Loan Documents to be created in the Collateral as collateral security for the payment of obligations, advances, debts or liabilities related to each Company's obligations;

(m)     any other Collateral Documents (as defined in the DIP Financing Agreement); and

(n)     such other documents, agreements, loan documents (including without limitation any Loan Document as defined in the DIP Financing Agreement), instruments, certificates, notices and assignments as may be reasonably requested by the DIP Agent or Lenders or contemplated by the DIP Financing Agreement or any other DIP Loan Document;

**RESOLVED**, that each of the Authorized Signatories, acting alone or with one or more other Authorized Signatory be, and hereby is, authorized, empowered and directed to negotiate, make, execute, acknowledge, verify, issue, deliver, and to cause each Company of which he or she is a Authorized Signatory to perform its respective obligations under the DIP Financing Agreement, each of the other DIP Loan Documents, and each of the instruments and documents contemplated thereby, in the name and on behalf of such Company, under its company seal or otherwise, substantially in the forms reviewed by the undersigned, with such additions, deletions, corrections and revisions on the terms and conditions thereof as the Authorized Signatory executing and delivering the same shall approve by the execution and delivery thereof, with such execution by said Authorized Signatory to constitute conclusive evidence of such Authorized Signatory's approval of the terms thereof, including any departures therein from the form presented to the Governing Bodies;

**RESOLVED**, that, in accordance with the terms and conditions of the DIP Financing Agreement and at the times and in the manner specified therein, as applicable, the Borrowers may borrow from the DIP Lenders such amounts as may be available to it thereunder, such borrowings to have the maturity, to be payable and prepayable and bear interest at the rates specified in the DIP Financing Agreement, and that each of the Authorized Signatories at the time in office acting singly is authorized, on behalf of the Borrowers, to cause such Borrowers to make the borrowings contemplated by the DIP Financing Agreement, the making of such borrowings to be conclusive evidence that the same has been authorized by each Governing Body;

**RESOLVED,** that each Guarantor be and hereby is, authorized to guarantee the payment and performance of the obligations, liabilities and indebtedness of the Borrowers arising under, out of, or in connection with, the DIP Financing Agreement or one or more other DIP Loan Documents executed and delivered in connection therewith, and any amendments of such DIP Financing Agreement or other DIP Loan Documents;

**RESOLVED**, that each Company will obtain benefits from the receipt of the Loans made by the DIP Lenders to the Borrowers and the other obligations under the DIP Financing Agreement and the other DIP Loan Documents, and each Company's guarantee thereof, which are necessary and convenient to support the conduct, promotion and attainment of the business of such Company;

**RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized and empowered to take all such further actions including, without limitation, to make all payments and remittances and to incur all fees and expenses, on behalf of each Company of which he or she is a Authorized Signatory, in connection with any transaction contemplated by these resolutions, such payment to conclusively evidence the necessity or appropriateness thereof, to arrange for and enter into supplemental agreements, amendments, instruments, certificates or other documents relating to the transactions contemplated by the DIP Financing Agreement or any of the DIP Loan Documents and to execute and deliver all such supplemental agreements, amendments, instruments, certificates or other documents, in the name and on behalf of each Company of which he or she is a Authorized Signatory, under its respective company seal or otherwise, which shall in their sole judgment be necessary, proper or advisable in order to perform such Company's obligations under or in connection with the DIP Financing Agreement or any of the DIP Loan Documents and the transactions contemplated therein, and to carry out fully the intent of the foregoing resolutions;

**RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized and empowered to take all actions, in the name of each Company of which he or she is a Authorized Signatory, with respect to the transactions contemplated by these resolutions as the sole shareholder, partner, member, manager, or managing member of each direct subsidiary of such Company, in each case, as such Authorized Signatory shall deem necessary or desirable in such Authorized Signatory's reasonable business judgment, including, without limitation, the authorization of resolutions and agreements necessary to authorize the execution, delivery and performance pursuant to any DIP Loan Document (including, without limitation, affidavits, financing statements, notices, reaffirmations and amendments and restatements of existing documents) as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein;

**RESOLVED**, that each of the Authorized Signatories be, and hereby is, authorized and empowered to execute and deliver, perform (or cause to perform) or otherwise approve any amendments, amendment and restatements, supplements, modifications, renewals, replacements, consolidations, substitutions and extensions of the DIP Loan Documents, in each case, in the name of and on behalf of each Company of which he or she is a Authorized Signatory, which shall in their sole judgment be necessary, proper or advisable;

**RESOLVED**, that all acts and actions taken by each Company or the Authorized Signatories prior to the date hereof with respect to the transactions contemplated by the DIP Financing Agreement and any of the other DIP Loan Documents be, and hereby are, in all respects confirmed, approved and ratified; and

**RESOLVED**, that all capitalized terms used in the resolutions under the caption "SUPERPRIORITY SECURED DEBTOR-IN-POSSESSION FINANCING AGREEMENT" and not otherwise defined in these resolutions shall have the meanings ascribed to such terms in the DIP Financing Agreement.

## APPROVAL OF THE RESTRUCTURING SUPPORT AGREEMENT AND RESTRUCTURING MATTERS

**WHEREAS**, each Board has reviewed and considered certain materials presented by, or on behalf of, Management and the Advisors regarding that certain restructuring support agreement (as may be amended, supplemented, or modified from time to time, the "Restructuring Support Agreement") and certain materials including, but not limited to, materials regarding the liabilities, obligations and liquidity of the Filing Entities, the strategic and financial alternatives available to the Filing Entities, and the impact of the foregoing on the Filing Entities' businesses and operations and the businesses and operations of the Filing Entities' affiliates;

**WHEREAS**, the Restructuring Support Agreement contemplates that the Filing Entities will, among other things, file a voluntary petition for relief (the "Bankruptcy Petition") pursuant to the Bankruptcy Code;

**WHEREAS**, each Board has reviewed and considered presentations by Management and the Advisors regarding the advantages and disadvantages of the debtor-in-possession financing facility and other transactions contemplated in the Restructuring Support Agreement;

**WHEREAS**, each Board has also reviewed, evaluated and considered drafts of the Restructuring Support Agreement presented to each such Board;

**WHEREAS**, each Board has had adequate opportunity to consult with Management and Advisors regarding the materials and documentation presented, to obtain additional information, and to fully consider each of the strategic alternatives available to the Filing Entities; and

**WHEREAS**, each Board has determined that the following resolutions and the actions, transactions and documentation contemplated thereby are advisable and in the best interests of the Filing Entities, their respective Stockholder or member, the Filing Entities' creditors and the other parties in interest.

**NOW, THEREFORE, BE IT HEREBY**

**RESOLVED**, that each Board has considered its fiduciary duties under applicable law in exercising its powers and discharging its duties, to act honestly and in good faith with a view to the best interests of the Filing Entities as a whole, and to exercise the care, diligence, and skill that a reasonably prudent person would exercise in comparable circumstances;

**RESOLVED**, that in the judgment of each Board, it is desirable and in the best interests of the Filing Entities, the Stockholder or members, the Filing Entities' creditors and the other parties in interest that the Filing Entities shall be, and hereby is, in all respects approved and authorized to file, or cause to be filed, the Bankruptcy Petition under the provisions of chapter 11 of the Bankruptcy Code (including all matters contemplated by the Restructuring Support Agreement and the postpetition credit facility memorialized by the DIP Financing Agreement and any of the other DIP Loan Documents (the "<u>DIP Financing</u>"), including any auction, sales process, merger, business combination, reorganization, recapitalization, asset sale, equity sale or other fundamental transaction contemplated thereby, collectively, the "<u>Restructuring Matters</u>") in the Bankruptcy Court for the Filing Entities; and, in accordance with the requirements of the shareholders' and the Filing Entities' governing documents and applicable law, hereby consent to, authorize, approve, confirm and ratify all actions in connection with, the filing of the Bankruptcy Petition;

**RESOLVED**, that any duly-appointed officer of the Filing Entities (acting at the direction of each Board or in a good faith manner consistent with its recommendations), each acting individually and with full power of substitution be, and hereby is, authorized and approved to execute and file on behalf of the Filing Entities all agreements, certificates, instruments, powers of attorneys, letters, forms, deeds, mortgages, resolutions, consents, petitions, schedules, lists, and other motions, papers, materials or documents, and to take any and all action that such Authorized Signatory deems necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of the Filing Entities;

**RESOLVED**, that in the judgment of each Board, it is desirable and in the best interests of the Filing Entities, the Stockholder or the members, the Filing Entities' creditors and the other parties in interest that the Filing Entities and the other parties thereto enter into the Restructuring Support Agreement (substantially in the form presented to each Board, with such changes as approved by one or more Authorized Signatories, such approval to be conclusively established by such Authorized Signatory's execution and delivery or taking thereof) and that the Filing Entities' performance of its obligations under the Restructuring Support Agreement be and hereby is, in all respects, authorized, approved, confirmed and ratified;

**RESOLVED**, that in the judgment of each Board, it is desirable and in the best interests of the Filing Entities, the Stockholder or the members, the Filing Entities' creditors and the other parties in interest, that the Authorized Signatories, acting individually and with full power of substitution, be, and hereby is, authorized, approved, empowered and directed, to take all actions (including, without limitation, to negotiate and execute any agreements, documents, or certificates) necessary to undertake and enter into the Restructuring Support Agreement (including the DIP Financing) and to consummate the transactions contemplated thereby, including without limitation, the negotiation and documentation of the chapter 11 plan, the incurrence of

indebtedness, assumption of obligations, rejection of obligations, sale of the Companies, sale of equity or assets, merger, liquidation, or other transactions contemplated thereby) and all exhibits, schedules, attachments, and ancillary documents or agreements related thereto (each in the form and upon the terms as such Authorized Signatory may approve, such approval to be conclusively established by such Authorized Signatory's execution and delivery or taking thereof), and that such Companies' entry into and performance of its obligations in respect thereof, is, in all respects, authorized, approved, confirmed and ratified;

**RESOLVED**, that each of the Authorized Signatories, acting individually and with full power of substitution, be, and hereby is, authorized, approved, empowered and directed, together with the Advisors, to file all other documents deemed necessary to confirm a plan, including, but not limited to, any amendments to and modifications of such plan; and

**RESOLVED**, that each of the Authorized Signatories, acting individually and with full power of substitution, be, and hereby is, authorized, approved, empowered and directed, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such instruments as each, in his or her discretion, may deem necessary or advisable in order to consummate the plan, if confirmed by the Bankruptcy Court, and all transactions contemplated by the Restructuring Support Agreement and the plan (including, without limitation, the incurrence of indebtedness, rejection of obligations, sale of the Filing Entities, sale or equity or assets, merger liquidation, or other transactions that may be in furtherance of the plan).

## CASH COLLATERAL AND ADEQUATE PROTECTION

**RESOLVED**, that the Filing Entities will obtain benefits from the use of collateral, including cash collateral, as that term is defined in  section 363(a) of the Bankruptcy Code (the "Cash Collateral"), which is security for certain prepetition term lenders (collectively, the "Lenders") under the First Lien Financing Agreement, dated as of July 20, 2021 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Credit Agreement"), among PGX Holdings, Inc., a Delaware corporation (the "Parent"), the Borrowers, the other Guarantors party thereto from time to time, the Lenders party thereto from time to time, and Blue Torch Finance LLC, a Delaware limited liability company, as Administrative Agent  and Collateral Agent ("Blue Torch") and the Second Lien Financing Agreement, dated as of July 21, 2021 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, the "Credit Agreement"), among the Parent, the Borrowers, the other Guarantors party thereto from time to time, the Lenders party thereto from time to time, and Prospect Capital Corporation, a Maryland corporation ("Prospect"), as Administrative Agent and Collateral Agent  (Blue Torch and Prospect, together with the Lenders, the "Secured Parties");

**RESOLVED**, that in order to use and obtain the benefits of the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, the Filing Entities will provide certain liens, claims, and adequate protection to the Secured Parties (the "Adequate Protection Obligations"), as documented in a proposed order in interim and final form (the "Cash Collateral Order") and submitted for approval to the Bankruptcy Court;

**RESOLVED**, that the form, terms, and provisions of the Cash Collateral Order to which the Filing Entities are or will be subject, and the actions and transactions contemplated thereby be, and hereby are, authorized, adopted, and approved, and each of the Authorized Signatories of the Filing Entities be, and hereby is, authorized and empowered, in the name of and on behalf of the Filing Entities, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the Cash Collateral Order; and

**RESOLVED**, that the Filing Entities, as debtors and debtors in possession under the Bankruptcy Code be, and hereby are, authorized to incur the Adequate Protection Obligations, including granting liens on its assets to secure such obligations.

## STALKING HORSE AGREEMENT

**WHEREAS**, in accordance with the Restructuring Support Agreement, certain of the parties that constitute the DIP Lenders (together, the "Stalking Horse Bidder") and the Companies have negotiated the terms of that certain asset purchase agreement (the "APA") to govern the Stalking Horse Bidder's purchase of substantially all of the Companies' assets, as set forth in the APA (the "Purchased Assets"), subject to the Companies' receipt of a higher or otherwise better offer and a "fiduciary out;"

**WHEREAS**, the Board has reviewed the APA (together with the other certificates, documents, agreements, and schedules contemplated under the APA, the "APA Documents"), and after due consideration and deliberation, determined that each of the transactions contemplated by the APA and the APA Documents (the "APA Transactions") are advisable and in the best interests of each of the Companies, their respective stockholder or member, their creditors and the other parties in interest; and

**WHEREAS**, the APA Transactions is subject to the Companies filing a motion (the "Sale Motion") with the Bankruptcy Court, seeking, among other things, approval of an auction process that will govern the marketing and sale of the Purchased Assets through certain bidding procedures to the Stalking Horse Bidder or another bidder with the highest or otherwise best offer (such bidder, the "Successful Bidder").

**NOW, THEREFORE, BE IT,**

**RESOLVED**, that the Companies are authorized to enter into the APA Documents and APA with the Stalking Horse Bidder for the sale of the Purchased Assets and to undertake any and all related transactions contemplated thereby, including the APA Transactions and an auction (if any), on the terms contained therein or on such other terms and conditions as the Authorized Signatories, or any of them, in their, his or her sole discretion, determine to be necessary, appropriate or desirable;

**RESOLVED**, that each of the Authorized Signatories of each of the Companies be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, each such Company to execute the APA and APA Documents, and to execute and file, on behalf of the Companies, the Sale Motion with the Bankruptcy Court; and

**RESOLVED**, that each of the Authorized Signatories of each of the Companies be, and hereby are, authorized, directed, and empowered in the name of, and on behalf of, each such Company to conduct an auction (if any) through the bidding procedures as approved by the Bankruptcy Court pursuant to the Sale Motion and to negotiate, for and on behalf of the Companies, such agreements, documents, assignments and instruments as may be necessary, appropriate or desirable in connection with the sale to the Successful Bidder.

## GENERAL

**RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Signatories, each of the Authorized Signatories (and their designees and delegates) be, and they hereby are, individually authorized and empowered, in the name of and on behalf of each Filing Entity, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including but not limited to filing fees, in each case as in such Authorized Signatory's judgment, shall be necessary, advisable, convenient, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

**RESOLVED**, that each Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of each Filing Entity, or hereby waive any right to have received such notice;

**RESOLVED**, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of each Filing Entity, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of each Filing Entity with the same force and effect as if each such act, transaction, agreement, or certificate has been specifically authorized in advance by resolution of each Board; and

**RESOLVED**, that each of the Authorized Signatories (and their designees and delegates) be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of each Filing Entity with respect to the transactions contemplated by these resolutions hereunder, as such Authorized Signatory shall deem necessary or desirable in such Authorized Signatory's reasonable business judgment as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein.

* * *

**IN WITNESS WHEREOF**, the undersigned represents that the Board has executed this written consent as of the date above first written.

EFOLKS HOLDINGS, INC., being the sole member and the manager of the Company listed on <u>Schedule 1</u>

By: _____
Name: Chad Wallace
Title: Chief Executive Officer

**IN WITNESS WHEREOF**, the undersigned represents that the Board has executed this written consent as of the date above first written.

DocuSigned by:

*Seb Cervinka*

251B7C0513B3431

Sebastien Cervinka

_____

Michael DeVico

_____

Eugene Davis

BEING ALL OF THE MEMBERS OF THE BOARD OF DIRECTORS OF EACH COMPANY LISTED ON <u>SCHEDULE 2</u>

**IN WITNESS WHEREOF**, the undersigned represents that the Board has executed this written consent as of the date above first written.

_____
Sebastien Cervinka

_____
Michael DeVico

_____
Eugene Davis

BEING ALL OF THE MEMBERS OF THE BOARD OF DIRECTORS OF EACH COMPANY LISTED ON <u>SCHEDULE 2</u>

**IN WITNESS WHEREOF**, the undersigned represents that the Board has executed this written consent as of the date above first written.

_____
Sebastien Cervinka


_____
Michael DeVico

DocuSigned by:

*Eugene Davis*

C99036B5ABD64B8...
_____
Eugene Davis


BEING ALL OF THE MEMBERS OF THE BOARD OF DIRECTORS OF EACH COMPANY LISTED ON <u>SCHEDULE 2</u>

**IN WITNESS WHEREOF**, the undersigned has executed this consent as of the date above first written.

PGX TOPCO LLC

By: _____
Name: Sebastien Cervinka
Its: Manager


BEING THE HOLDERS OF A MAJORITY OF THE OUTSTANDING COMMON STOCK OF EACH COMPANY LISTED ON SCHEDULE 3

## SCHEDULE 1

| | Company | Jurisdiction |
|---|---|---|
| 1. | eFolks, LLC | Delaware |

## SCHEDULE 2

| | Company | Jurisdiction |
|---|---|---|
| 1. | eFolks Holdings, Inc. | Delaware |
| 2. | Progrexion Marketing, Inc. | Delaware |
| 3. | Progrexion Teleservices, Inc. | Delaware |
| 4. | Progrexion ASG, Inc. | Delaware |
| 5. | Progrexion IP, Inc. | Delaware |
| 6. | Credit.com, Inc. | Delaware |
| 7. | Creditrepair.com, Inc. | Florida |
| 8. | Credit Repair UK, Inc. | Delaware |
| 9. | Creditrepair.com Holdings, Inc. | Delaware |
| 10. | Progrexion Holdings, Inc. | Delaware |
| 11. | PGX Holdings, Inc. | Delaware |

## SCHEDULE 3

| | Company | Jurisdiction |
|---|---|---|
| 1. | PGX Holdings, Inc. | Delaware |

**EXHIBIT A**

| ENTITIES | OFFICERS | DIRECTORS |
|---|---|---|
| PGX Holdings, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Credit Repair UK, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Credit.com, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Creditrepair.com Holdings, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Creditrepair.com, Inc. | John Itokazu – *President*<br>Chad Wallace – *Secretary* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| eFolks Holdings, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| eFolks, LLC | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | N/A |
| Progrexion ASG, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Progrexion Holdings, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Progrexion IP, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Progrexion Marketing, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |
| Progrexion Teleservices, Inc. | Chad Wallace – *Chief Executive Officer*<br>Michael DeVico – *Executive Chairman*<br>Jared Hartley – *Chief Financial Officer* | Sebastien Cervinka<br>Michael DeVico<br>Eugene Davis |